UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

STEVE LOPEZ,

                                              Plaintiff,


            -against-

CITY OF NEW YORK, RAMON ROSARIO, Individually,
CARLOS GONZALEZ, Individually, HARRY HILDEBRANDT,
Individually, MICHAEL SHEEHAN, Individually,
JOHN HARTIGAN, Individually, THOMAS MCKENNA,
Individually, HUMBERTO ARROYO, Individually,
SCOTT JAFFER, Individually, JOHN O'SULLIVAN,
Individually, JOHN TAGLIONI, Individually,
BILL KELLY, Individually, ROBERT NUGENT, Individually,
THOMAS MCCABE, Individually, JACK DOYLE, Individually,
AUGUST JONZA, Individually, VICTOR CORNETTA,
Individually, LINDA FAIRSTEIN, Individually,
ELIZABETH LEDERER, Individually, ARTHUR CLEMENTS,
Individually, and JOHN and JANE DOE 1 through 10,
Individually (the names John and Jane Doe being fictitious, as
the true names are presently unknown),

                                              Defendants.

--------------------------------------------------------------------------------X

**COMPLAINT**

Docket No.

<u>Jury Trial Demanded</u>

       Plaintiff STEVE LOPEZ, by his attorneys, Brett H. Klein, Esq., PLLC, complaining of

the defendants, respectfully alleges as follows:

## <u>Preliminary Statement</u>

       1.    Plaintiff brings this action for compensatory damages, punitive damages, and

attorneys' fees pursuant to 42 U.S.C. §§ 1983, and 1988 for violations of his civil rights, as said

rights are secured by said statutes and the Constitution of the United States. Plaintiff also asserts

supplemental New York State law and New York City Administrative Code claims.

## <u>JURISDICTION</u>

       2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments to the United States Constitution.

     3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

<u>**VENUE**</u>

     4.     Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that this is the district in which the claim arose.

<u>**JURY DEMAND**</u>

     5.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38 (b).

<u>**PARTIES**</u>

     6.     Plaintiff STEVE LOPEZ is a forty-nine-year-old man residing in New York, New York.

     7.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

     8.     Defendant CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

     9.     That at all times hereinafter mentioned, RAMON ROSARIO, CARLOS GONZALEZ, HARRY HILDEBRANDT, MICHAEL SHEEHAN, JOHN HARTIGAN, THOMAS MCKENNA, HUMBERTO ARROYO, SCOTT JAFFER, JOHN O'SULLIVAN, JOHN TAGLIONI, BILL KELLY, ROBERT NUGENT, THOMAS MCCABE, JACK DOYLE, AUGUST JONZA, VICTOR CORNETTA, and JOHN and JANE DOE 1 through 10 (hereinafter

2

"NYPD Defendants"), were duly sworn supervisors and police officers of said department and were acting under the supervision of said department and according to their official duties.

10.    That at all times hereinafter mentioned, LINDA FAIRSTEIN, ELIZABETH LEDERER, and ARTHUR CLEMENTS (hereinafter "ADA Defendants"), were Assistant District Attorneys working for the New York County District Attorney's Office, and were acting in their investigatory capacities.

11.    That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or the City of New York.

12.    Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## **FACTS**

13.    This action arises from plaintiff STEVE LOPEZ'S arrest on April 20, 1989, when he was fifteen years old, and his ensuing malicious prosecution for his alleged involvement in the rape of a female jogger and robbery of a male jogger in Central Park, in New York, New York, on April 19, 1989.

14.    Mr. Lopez was wholly innocent of these crimes, and the prosecution was initiated without probable cause and with malice based on false evidence and coerced statements obtained pursuant to an investigation conducted by defendant officers of the New York City Police Department and attorneys of the New York County District Attorney's Office, the NYPD and

ADA Defendants, who within hours of the rape and robbery, became myopically focused on the purported involvement in the crimes of a number of young Black and Hispanic adolescents.

15.     Said defendant detectives and assistant district attorneys, through the use of coercive and deceptive interrogation techniques, including force and trickery, sleep deprivation and isolation from their families, coerced or otherwise conspired to coerce from each of these young men admissions that they knew were false, some of which implicated Mr. Lopez in these heinous crimes.

16.     In truth, the rape was committed by an individual, Matias Reyes, who had committed three prior sexual assaults, and though he was apparently known to the NYPD, was neither targeted in this investigation, nor was information about his pattern of similar rapes turned over to plaintiff's or the Central Park Five's defense attorneys, despite that such evidence was exculpatory, and was thereby allowed to remain free and to continue to assault women after these events.  The robbery was also committed by youths other than Mr. Lopez.

17.     These events giving rise to Mr. Lopez's claims began on April 19, 1989, sometime between 9:00 p.m. and 9:30 p.m., when a series of more minor crimes allegedly occurred inside Central Park.

18.     In response to these more minor events, and prior to discovery of the rape victim, who would later become known as the "Central Park Jogger," several young Black and Hispanic men, including Mr. Lopez, who were in the vicinity of Central Park, were arrested seemingly at random.

19.     After the discovery of the Central Park Jogger after plaintiff was taken into custody, the NYPD Defendants began to focus on the potential involvement of the individuals

4

they already had in custody in the rape of the Central Park Jogger and the robbery of the male jogger. These young men included, in addition to Mr. Lopez, Antron McCray, Kevin Richardson, Raymond Santana, Kharey Wise, and Yusef Salaam—who would later become known as the "Central Park Five"—as well as additional young men who had also been arrested that night.

20.     Said defendant officers, with the assistance of the ADA Defendants, proceeded to systematically violate the rights of these young men through coerced oral, written, and video statements.

21.     The defendants involved in investigating these events and in obtaining the coerced and false statements include, but are not limited to, NYPD Defendants Ramon Rosario, Carlos Gonzalez, Harry Hildebrandt, Michael Sheehan, John Hartigan, Thomas McKenna, Humberto Arroyo, Scott Jaffer, John O'Sullivan, John Taglioni, Bill Kelly, Robert Nugent, Thomas McCabe, Jack Doyle, August Jonza, Victor Cornetta, and ADA Defendants Linda Fairstein, Elizabeth Lederer, and Arthur "Tim" Clements.

22.     Through coercive and improper tactics, the aforementioned NYPD Defendants and ADA Defendants obtained false statements implicating Mr. Lopez in the rape of the female jogger and the robbery of the male jogger from, upon information and belief, individuals including, McCray, Richardson, Santana, Wise, and at least one uncharged witness.

23.     The statements obtained from these young teens were obtained through coercion, suggestion by their interrogators, and under duress, often without parental involvement, and were inconsistent internally, with each other, and with the physical evidence obtained, all of which undermined any claim of reliability.

24.     Moreover, one of the individuals who the male jogger affirmatively identified as being involved in attacking him did not identify Mr. Lopez as being involved in the robbery of the male jogger.  Mr. Lopez denied any involvement in both the rape and the robbery.

25.     Nonetheless, based on the false, coerced, inconsistent, and unreliable statements obtained by defendants or which the NYPD Defendants conspired with the ADA Defendants to obtain, and which were then forwarded to the New York County District Attorney's Office, and were sworn to by defendant Hartigan, plaintiff was arraigned in New York City Criminal Court on or about April 24, 1989, and charged with Rape in the 1st Degree, P.L. 130.35(1); Attempted Murder in 2nd Degree, P.L. 110/125.25(1), and Assault in the 1st Degree, P.L. 120.10(1), and remanded to the custody of New York City Department of Correction.

26.     On or about, April 27, 1989, based on the false, coerced, inconsistent, and unreliable statements obtained by the defendants, plaintiff was indicted by a New York County Grand Jury, and the indictment was subsequently filed under Indictment Number 4762/89.

27.     The prosecutions against Mr. Lopez and the Central Park Five proceeded, with their trials scheduled to occur in three groups, with Lopez to be tried last.

28.     The first trial involved McCray, Salaam, and Santana, who were all convicted on all counts on June 25, 1990.

29.     The second trial involved Richardson and Wise, who were both convicted on all counts on December 11, 1990.

30.     Just before Mr. Lopez was scheduled to begin his trial, with a jury waiting to be brought in the courtroom, he was offered a one-time plea bargain.

31.     To avoid trial and otherwise under duress after a protracted and widely publicized

prosecution, on January 30, 1991, Mr. Lopez involuntarily pled guilty to Robbery in the First Degree (P.L. §165.01(3)), in full satisfaction of the indictment that had been lodged against him.

32.    Plaintiff served over three years in prison as a result of this unjust conviction, and has suffered mental anguish ever since, including living with the stigma of being wrongfully convicted of one of the most notorious crimes in New York City history for over three decades.

33.    In January 2002, Matias Reyes informed law enforcement officials that he had alone committed the rape and assault of the Central Park Jogger.

34.    DNA testing and a thorough review of the evidence by the New York County District Attorney's Office conclusively confirmed that Reyes alone perpetrated the crimes against the Jogger, and that his DNA matched evidence recovered from the crime.

35.    In light of these discoveries, which wholly undermined the statements obtained during the investigation by the NYPD and ADA Defendants, the Central Park Five filed C.P.L. 440 motions to vacate their convictions.  Their motions were granted on December 19, 2002.

36.    Despite being aware of the lack of integrity of the evidence used to prosecute Mr. Lopez, the defendants took no steps to move to vacate this wrongful conviction until Mr. Lopez affirmatively sought review of his case on February 9, 2021.

37.    In response to Mr. Lopez' request, the New York County District Attorney's Office undertook an investigation into Mr. Lopez's conviction, reviewing the voluminous case materials related to the events of April 19, 1989, the trials, the reinvestigation, and materials related to a civil rights lawsuit commenced and litigated by the Central Park Five in this Court, concluding that the New York County District Attorney's Office no longer had confidence in the Mr. Lopez's conviction, and filed a joint motion with Mr. Lopez to vacate his conviction.

38.     In making the motion, the New York County District Attorney's Office agreed that Mr. Lopez had been forced to choose between pleading guilty or facing a trial based on false statements and unreliable forensic evidence, and among other factors, that given his age, combined with the pre-trial publicity, and knowledge of the result of the two trials that preceded his, rendered his plea of guilty involuntary.

39.     On July 25, 2022, upon the joint motion by Mr. Lopez and the New York County District Attorney's Office to vacate the plea and to dismiss all charges against Mr. Lopez, plaintiff's unjust conviction was dismissed and sealed in the Supreme Court of the State of New York.

40.     As a result of defendants' actions, plaintiff was incarcerated for approximately three years. He was further compelled to live with the stigma and negative consequences of this heinous conviction for over three decades.

41.     Defendant RAMON ROSARIO, CARLOS GONZALEZ, HARRY HILDEBRANDT, MICHAEL SHEEHAN, JOHN HARTIGAN, THOMAS MCKENNA, HUMBERTO ARROYO, SCOTT JAFFER, JOHN O'SULLIVAN, JOHN TAGLIONI, BILL KELLY, ROBERT NUGENT, THOMAS MCCABE, JACK DOYLE, AUGUST JONZA, VICTOR CORNETTA, LINDA FAIRSTEIN, ELIZABETH LEDERER, ARTHUR CLEMENTS, and JOHN and JANE DOE 1 through 10, either directly participated and conspired to engage in the above illegal acts, failed to intervene in them despite a meaningful opportunity to do so, or supervised and approved of, oversaw, and otherwise participated in the aforementioned misconduct.

42.     All of the above occurred as a direct result of the unconstitutional policies,

customs, or practices of the City of New York as applied to the NYPD and the District Attorney's Office that were in existence at the time of the conduct alleged herein, including, without limitation, the inadequate screening, hiring, retaining, training, and supervising its employees; and pursuant to customs or practices of employing individuals who were unqualified for their jobs and who engaged in falsification, and of lax or otherwise inadequate investigations.

43. Defendant City and the NYPD, by their policy-making agents, servants and employees, including then-Commissioner Raymond Kelly, authorized, sanctioned and/or ratified the police defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts to continue.

44. The actions of the police defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by police officers, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons.

45. The aforesaid event is not an isolated incident. Defendant CITY OF NEW YORK was aware from lawsuits, notices of claims, complaints filed with the NYPD's Internal Affairs Bureau, and the Civilian Complaint Review Board, and media coverage, that widespread issues with the training and supervising of NYPD officers, with misconduct of officers, and with the adequacy of NYPD investigations existed at the time of these events.

46. These issues and problems were confirmed and acknowledged by the Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994.

47.    Defendant CITY OF NEW YORK is further aware that such improper training and supervision has often resulted in a deprivation of civil rights.  Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action, or to properly train, instruct, and discipline its police officers.  This failure caused the officers in the present case to violate the plaintiffs' civil rights.

48.    Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers. Despite such notice, defendant CITY of NEW YORK has retained these officers, and failed to adequately train and supervise them.

49.    The aforementioned City policies, practices and customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the broad-sweeping police misconduct detailed herein.  Distinct sets of police officers subjected each of the adolescent suspects to coercive interrogations and deprived them of exculpatory evidence.  These officers, collectively numbering over a dozen, represent the corrupt policies and practices of various investigative units of the NYPD, including but not limited to the Manhattan North Task Force, Anti-Crime, Sex Crimes, Night Watch, and Homicide.

50.    All of the acts by the ADA Defendants described above were likewise carried out pursuant to policies and practices of the City of New York which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and under the supervisory authority of the New York County District Attorney's Office.

51.    Defendant City and the ADA Defendants, by their policy-making agents,

servants and employees, authorized, sanctioned and/or ratified the ADA Defendants' wrongful acts; and/or failed to prevent or stop these acts; and/or allowed or encouraged these acts to continue.

52.     The actions of the ADA Defendants also resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by prosecutors, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite substantial exculpatory evidence known to them and withheld from accused persons.

53.     The existence of such unlawful *de facto* policies and/or well-settled and widespread customs and practices were known to supervisory and policy-making officers and officials of the District Attorney's Office and the City, including, without limitation, then District Attorney Robert Morgenthau, and defendant Assistant District Attorney Fairstein, and their predecessors in interest, for a substantial period of time.

54.     Despite knowledge of such unlawful *de facto* policies and practices, these supervisory and policy-making officials of the District Attorney's Office and the City and their predecessors in interest did not take steps to terminate these policies and practices, did not discipline individuals who engage in such practices, or otherwise properly train prosecutors with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or reckless disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

55.     The aforementioned City policies, practices and customs of failing to supervise,

train, instruct and discipline prosecutors and encouraging their misconduct are evidenced by the broad-sweeping prosecutorial misconduct detailed herein. Several different members of the District Attorney's Office directly subjected plaintiff and the other young men arrested to coercive interrogations and deprived them of exculpatory evidence.

56.    The City policies, practices and customs in existence at the time of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are further evidenced, inter alia, by the Mollen Commission's conclusion that the same tolerance of perjury and falsifications that is exhibited among police officers is exhibited among prosecutors. The Commission specifically noted that "several former and current prosecutors acknowledged – 'off the record' – that perjury and falsifications are serious problems in law enforcement that, though not condoned, are ignored." Mollen Commission Report, p. 42.

57.    All of the aforementioned acts of defendants, their agents, servants, and employees were conducted under the color of state law.

58.    All of the aforementioned acts deprived plaintiff STEVE LOPEZ of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

59.    The acts complained of were conducted by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

60.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective

municipality/authority, which is forbidden by the Constitution of the United States.

61.    As a result of the foregoing, plaintiff STEVE LOPEZ sustained, *inter alia*, emotional distress, pain and suffering, and deprivation of his constitutional rights.

## **Federal Claims**

### **AS AND FOR A FIRST CAUSE OF ACTION**
(Violation of Right to Fair Trial under 42 U.S.C. § 1983 against the Individual NYPD and ADA Defendants)

62.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63.    Defendants created false evidence against plaintiff STEVE LOPEZ.

64.    Defendants utilized this false evidence against plaintiff STEVE LOPEZ in legal proceedings.

65.    As a result of defendant's creation and use of false evidence, plaintiff STEVE LOPEZ suffered a violation of his constitutional rights to a fair trial, as guaranteed by the United States Constitution, and was deprived of his liberty.

66.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### **AS AND FOR A SECOND CAUSE OF ACTION**
(Malicious Prosecution under 42 U.S.C. § 1983 against the Individual NYPD and ADA Defendants)

67.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "66" with the same force and effect as if fully set forth herein.

68.    Defendants initiated, commenced, and continued a malicious prosecution against plaintiff STEVE LOPEZ.

69.    Defendants caused plaintiff STEVE LOPEZ to be prosecuted without any probable cause until the charges were dismissed on or about July 25, 2022.

70.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Failure to Intervene under 42 U.S.C. § 1983 1983 against the Individual NYPD and ADA Defendants)

71.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "70" with the same force and effect as if fully set forth herein.

72.    Defendants had an affirmative duty to intervene on behalf of plaintiff STEVE LOPEZ, whose constitutional rights were being violated in their presence by other officers.

73.    The defendants failed to intervene to prevent the unlawful conduct described herein.

74.    As a result of the foregoing, plaintiff STEVE LOPEZ was maliciously prosecuted, denied his right to fair trial, compelled to appear in criminal court, and his liberty was restricted for an extended period of time.

75.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs,

and disbursements of this action.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983 against John/Jane Doe Defendants)

76.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77.    The supervisory defendants personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train their subordinate employees.

78.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Conspiracy under 42 U.S.C. § 1983 the Individual NYPD and ADA Defendants)

79.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80.    The NYPD Defendants and ADA Defendants conspired to undermine plaintiff STEVE LOPEZ's right to be free from malicious prosecution and from fabrication of evidence and/or deprivation of his right to a fair trial.

81.    As a result of the foregoing, plaintiff STEVE LOPEZ was maliciously prosecuted and subjected to deprivation of his right to a fair trial.

82.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the

individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Municipal Liability under 42 U.S.C. § 1983 against Defendant City of New York)

83.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "82" with the same force and effect as if fully set forth herein.

84.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure, or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

85.    The aforementioned customs, policies, usages, practices, procedures, and rules of the New York City Police Department and the New York County District Attorney's Office included, but were not limited to, inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of plaintiff STEVE LOPEZ'S rights as described herein.  In addition, the New York City Police Department was aware that many officers engage in falsification in support of improper arrests.  As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

86.    Likewise, the actions of the ADA Defendants resulted from and were taken pursuant to *de facto* policies and/or well-settled and widespread customs and practices of the City, which are implemented by prosecutors, to prosecute and continue to prosecute persons through fabricated and manipulated allegations without adequate basis in fact and/or despite

substantial exculpatory evidence known to them and withheld from accused persons.

87.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK, the New York City Police Department, and the New York County District Attorney's Office constituted deliberate indifference to the safety, well-being, and constitutional rights of plaintiff STEVE LOPEZ.

88.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK, the New York City Police Department, and the New York County District Attorney's Office were the direct and proximate cause of the constitutional violations suffered by plaintiff STEVE LOPEZ as alleged herein.

89.    The foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK, the New York City Police Department, and the New York County District Attorney's Office were the moving force behind the Constitutional violations suffered by plaintiff STEVE LOPEZ as alleged herein.

90.    As a result of the foregoing customs, policies, usages, practices, procedures, and rules of the CITY OF NEW YORK, the New York City Police Department, and the New York County District Attorney's Office, plaintiff STEVE LOPEZ was maliciously prosecuted and denied his right to a fair trial.

91.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff STEVE LOPEZ'S constitutional rights.

92.    All of the foregoing acts by defendants deprived plaintiff STEVE LOPEZ of federally protected rights, including, but not limited to, the right:

    A.    To receive his right to fair trial; and

B.    To be free from malicious prosecution.

93.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## Supplemental State Law and Administrative Code Claims

94.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "93" with the same force and effect as if fully set forth herein.

95.    Within ninety (90) days after the claims herein accrued, plaintiff duly served upon, presented to, and filed with the CITY OF NEW YORK, Notices of Claim setting forth all facts and information required under the General Municipal Law 50-e.

96.    The CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

97.    This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

98.    Plaintiff has complied with all conditions precedent to maintaining the instant action.

99.    This action falls within one or more of the exceptions as outlined in C.P.L.R. 1602.

## AS AND FOR A SEVENTH CAUSE OF ACTION
(Malicious Prosecution under New York State Law Against All Defendants)

100.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

18

paragraphs numbered "1" through "99" with the same force and effect as if fully set forth herein.

101.    Defendant officers and prosecutors initiated, commenced, and continued a malicious prosecution against plaintiff STEVE LOPEZ.

102.    Defendant officers caused plaintiff STEVE LOPEZ to be prosecuted without probable cause until the unjust conviction and indictment were dismissed on or about July 25, 2022.

103.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
(Negligent Screening, Hiring, and Retention under New York State Law Against Defendant City of New York)

104.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "103" with the same force and effect as if fully set forth herein.

105.    Upon information and belief, defendant CITY OF NEW YORK failed to use reasonable care in the screening, hiring and retention of the aforesaid defendants who conducted and participated in the arrest of plaintiff STEVE LOPEZ.

106.    Defendant CITY OF NEW YORK knew or should have known in the exercise of reasonable care, the propensities of the individual defendants to engage in the wrongful conduct heretofore alleged in this Complaint.

107.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the

individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A NINTH CAUSE OF ACTION
(Negligent Training and Supervision under New York State Law Against Defendant City of New York)

108.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "107" with the same force and effect as if fully set forth herein.

109.    Upon information and belief, the defendant CITY OF NEW YORK failed to use reasonable care in the training and supervision of the aforesaid defendants who conducted and participated in the excessive use of force against and the arrest of plaintiff STEVE LOPEZ.

110.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

## AS AND FOR A TENTH CAUSE OF ACTION
(Negligence Against Defendant City of New York)

111.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "110" with the same force and effect as if fully set forth herein.

112.    Upon information and belief, defendant CITY OF NEW YORK negligently failed to investigate and/or unreasonably delayed taking steps to vacate plaintiff's conviction, despite knowing that it was in possession of evidence that undermined the integrity of plaintiff's wrongful conviction

20

113.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs, and disbursements of this action.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
(N.Y.C. Administrative Code §§ 8-801 through 8-807 Against All Defendants)

114.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph numbered "1" through "113" with the same force and effect as if fully set forth herein.

115.    Plaintiff STEVE LOPEZ's right to be free from malicious prosecution was violated by the conduct of the defendants.

116.    The City of New York is liable as the employer of the defendants under New York City Administrative Code § 8-803(b).

117.    Qualified immunity is no defense to this claim.

118.    As a result of the foregoing, plaintiff STEVE LOPEZ is entitled to compensatory damages in an amount to be fixed by a jury and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff STEVE LOPEZ demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)    full and fair compensatory damages in an amount to be determined by a jury;

(B)    punitive damages against the individual defendants in an amount to be determined by a jury;

(C)    reasonable attorneys' fees and the costs and disbursements of this action; and

(D)    such other and further relief as appears just and proper.

Dated: New York, New York
       October 23, 2023

                          BRETT H. KLEIN, ESQ., PLLC
                          Attorneys for Plaintiff STEVE LOPEZ
                          305 Broadway, Suite 600
                          New York, New York 10007
                          (212) 335-0132

                   By:    _Brett Klein_____
                          BRETT H. KLEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X

STEVE LOPEZ,

                                        Plaintiff,


              -against-                                          Docket No.

CITY OF NEW YORK, RAMON ROSARIO, Individually,
CARLOS GONZALEZ, Individually, HARRY HILDEBRANDT,
Individually, MICHAEL SHEEHAN, Individually,
JOHN HARTIGAN, Individually, THOMAS MCKENNA,
Individually, HUMBERTO ARROYO, Individually,
SCOTT JAFFER, Individually, JOHN O'SULLIVAN,
Individually, JOHN TAGLIONI, Individually,
BILL KELLY, Individually, ROBERT NUGENT, Individually,
THOMAS MCCABE, Individually, JACK DOYLE, Individually,
AUGUST JONZA, Individually, VICTOR CORNETTA,
Individually, LINDA FAIRSTEIN, Individually,
ELIZABETH LEDERER, Individually, ARTHUR CLEMENTS,
Individually, and JOHN and JANE DOE 1 through 10,
Individually (the names John and Jane Doe being fictitious, as
the true names are presently unknown),

                                        Defendants.

-----------------------------------------------------------------------------------X


**COMPLAINT**


**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132